LEO F. SULLIVAN vs. TOWN OF BELMONT.

Middlesex.    February 9, 1979. — March 19, 1979.

Present: HALE, C.J., GRANT, & PERRETTA, JJ.

*Labor. Public Employment. Arbitration. Contract*, Collective bargaining contract. *Municipal Corporations*, Collective bargaining.

A firefighter was not entitled to have the issue of his eligibility for accidental disability retirement under G. L. c. 32 determined by arbitration pursuant to a collective bargaining agreement rather than by the Contributory Retirement Appeal Board acting under the provisions of c. 32, § 16(4). [216-221]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 2, 1976.

On transfer to the Superior Court the case was heard by *Adams*, J., on a motion to dismiss.

*Sanford A. Kowal* for the plaintiff.

*Thomas J. Urbelis* for the defendant.

GRANT, J. This is an action brought by a firefighter in the town of Belmont who seeks a declaratory judgment to the effect that he is entitled to have the question whether he is "permanently incapacitated" within the meaning and for the purposes of G. L. c. 32, § 7(1) (as amended through St. 1967, c. 826, § 12), determined by an arbitrator selected and acting under the grievance provisions of a collective bargaining agreement rather than by the Contributory Retirement Appeal Board (CRAB) acting under the provisions of G. L. c. 32, § 16(4).[1] The plaintiff

---

[1] The complaint was originally filed in the Supreme Judicial Court but was later transferred to the Superior Court for disposition. Nobody has raised, and we do not pass on, the question whether the plaintiff should have proceeded under G. L. c. 150C, § 2(*a*). See also G. L. c. 150C, § 15.

has appealed from a final judgment of dismissal entered in the Superior Court. The following is a summary of the undisputed facts which appear from the papers reproduced in the record appendix.

On March 8, 1976, the plaintiff filed with the Belmont contributory retirement board (board) a written application under G. L. c. 32, § 7(1), in which he requested that he be retired for accidental disability by reason of a personal injury he claims he sustained on May 5, 1973. On September 21, 1976, the board denied the plaintiff's application and gave him written notice to that effect, together with a copy of the provisions of G. L. c. 32, § 16(4). At that time the plaintiff was a member of a local union of firefighters which had entered into a collective bargaining agreement with the town of Belmont (acting by its board of selectmen) which contained a five-step grievance procedure. The relevant section of that agreement (§ 12) opened with: "Grievances shall involve only questions as to whether the Town is complying with the express provisions of this Agreement . . . ." However, the same section also contained the following paragraph: "Notwithstanding any other provisions of this Agreement, any matter which is subject to the jurisdiction of the Civil Service Commission or any Retirement Board established by law shall not be a subject of grievance or arbitration hereunder unless the employee makes an election as authorized under General Laws Chapter 150E, Section 8."

On September 29, 1976, the plaintiff and the union, claiming to have exhausted all the various steps of the grievance procedure, made written demand on the board of selectmen and the chief of the fire department for arbitration of the question of the plaintiff's eligibility for accidental disability retirement under G. L. c. 32, § 7(1). The selectmen refused that demand by letter dated October 20, 1976, in which they suggested that the plaintiff

"avail himself of the appeal mechanisms provided by law from adverse decisions of local Contributory Retirement Boards." Shortly thereafter the plaintiff filed with CRAB a claim of appeal from the decision of the Belmont retirement board.[2] The present action followed.

The only question of substance which is presented by the appeal is the proper interpretation of the concluding proviso of G. L. c. 150E, § 8 (inserted by St. 1973, c. 1078, § 2[3]), which read: "and further provided that binding arbitration hereunder shall be enforceable under the provisions of chapter one hundred and fifty C and shall, where such arbitration is elected by the employee as the method of grievance resolution, be the exclusive procedure for resolving any such grievance involving suspension, dismissal, removal or termination notwithstanding any contrary provisions of sections forty-three and forty-six G of chapter thirty-one, section sixteen of chapter thirty-two, or sections forty-two through forty-three A, inclusive, of chapter seventy-one." It appears to be common ground that the objective of the grievance provisions of the collective bargaining agreement in the present case was to confer on the plaintiff and others similarly situated the right to demand arbitration of their rights under G. L. c. 32, § 16, to the extent that objective might be consistent with the authorization found in G. L. c. 150E, § 8. Beyond that, the parties are in deep disagreement. The plaintiff contends (1) that an employee's retirement for disability under G. L. c. 32, § 7(1), involves a "termination of his service within the meaning of G. L. c. 150E, § 8; (2) that the reference in that section to the provisions of G. L. c. 32, § 16, was intended to comprehend the right of appeal to CRAB which would otherwise be avail-

---

[2] Counsel for the plaintiff filed an affidavit in the Superior Court advising of his intention to withdraw the claim of appeal if the plaintiff prevails in the present action.

[3] We are not here concerned with the amendment of § 8 which was effected by St. 1978, c. 393, § 39.

able to an employee under the provisions of G. L. c. 32, § 16(4), from an adverse decision on his application under G. L. c. 32, § 7(1); and, therefore, (3) that he has the unilateral right to have the question of his alleged disability determined by an arbitrator in accordance with the provisions of the collective bargaining agreement rather than by CRAB. The defendant disputes each of those propositions and contends that the plaintiff's exclusive remedy is an appeal to CRAB under the provisions of G. L. c. 32, § 16(4).

Any resolution of those contentions requires careful consideration of the continuing legislative debate (see 1969 House Doc. No. 4746, at 37-38) over the wisdom of the policy expressed in G. L. c. 149, § 178I (inserted by St. 1965, c. 763, § 2), that "[i]n the event that any part or provision of . . . [a collective bargaining] agreement is in conflict with any law, ordinance or by-law, such law, ordinance or by-law shall prevail so long as such conflict remains" which had led to decisions such as those reached in *Chief of Police of Dracut* v. *Dracut*, 357 Mass. 492, 498-504 (1970). The Special Legislative Study Commission on Collective Bargaining which had been created by Res. 1969, c. 97 (as amended through Res. 1973, c. 5), to study and recommend changes in the statutes governing labor relations in the public sector[4] recommended the enactment of a provision which read: "(*d*) If there is a conflict between the collective bargaining agreement and any civil service law, rule or regulation, any personnel ordinance or bylaw, or any rule or regulation promulgated by the employer, the terms of the agreement shall prevail." See 1973 House Doc. No. 6194 at 21.

What ultimately emerged from the legislative process is to be found in the repeal (by St. 1973, c. 1078, § 1) of G. L. c. 149, § 178I, and in the enactment (by St. 1973, c. 1078, § 2) of the provisions of G. L. c. 150E, §§ 7 and 8.[5]

---

[4] See *Director of the Div. of Employee Relations of the Dept. of Admn. & Fin.* v. *Labor Relations Commn.*, 370 Mass. 162, 167 (1976).

[5] Nothing in our discussion of §§ 7 and 8 is affected by any of the subsequent amendments of either section. In particular, none of those

The third paragraph of § 7 provided, with a qualification not here material, that in the event of a conflict, the provisions of a collective bargaining agreement should prevail over both (1) the inconsistent provisions of certain types of municipal personnel ordinances, by-laws, rules and regulations (including the type considered in the *Dracut* case) and (2) the inconsistent provisions of certain specifically listed sections of the General Laws. None of the sections so listed was to be found in any of G. L. cc. 31, 32, or 71. The only reference to any of the sections of any of those three chapters was in the concluding proviso of the then new G. L. c. 150E, § 8, which has already been quoted in full, *supra* at 216. When the new G. L. c. 150E, §§ 7 and 8, are read together in light of the legislative history which has already been outlined, it is apparent that the Legislature intended to authorize collective bargaining agreements which would give public employees the unilateral right to bypass the statutory procedures which would otherwise apply to them by demanding arbitration of all disputes which might involve "suspension, dismissal, removal or termination" under the provisions of G. L. c. 31, §§ 43 and 46G, of G. L. c. 32, § 16, and of G. L. c. 71, §§ 42 through 43A.

We turn now to an analysis of the words just quoted. It is agreed that voluntary retirement for accidental disability under G. L. c. 32, § 7(1), such as the plaintiff has requested in the present case, does not involve a "suspension, dismissal [or] removal" within the meaning of G. L. c. 150E, § 8; the controversy in this branch of the case is as to whether voluntary retirement constitutes a "termination" within the meaning of G. L. c. 32, § 16, and G. L. c. 150E, § 8.[6] If we assume, as the plaintiff urges, that any

_____

amendments has contained any reference to any of the sections of G. L. c. 32 or to any rule or regulation promulgated under any of those sections. See St. 1974, c. 589, § 1; St. 1976, c. 480, § 21; St. 1977, c. 278, § 4; St. 1977, c. 937, § 3; St. 1978, c. 393, § 39; St. 1978, c. 478, § 77.

[6] The word "termination" was inserted without explanation in what is now G. L. c. 150E, § 8, during the course of the transition from 1973

form of retirement by or of an active member of a retirement system results in the termination of his service to the public, still the word "termination" as used in § 8 must be construed in context (see *Commonwealth* v. *Baker*, 368 Mass. 58, 68 [1975]) with the immediately preceding words "suspension, dismissal [and] removal" which appear in the same section and all of which carry a connotation of involuntary change in an employee's status which is initiated by his employer. The same notion emerges from an examination of the various sections of G. L. cc. 31 and 71 which were specifically referred to in the concluding proviso of § 8; each of those sections (G. L. c. 31, §§ 43 and 46G; G. L. c. 71, §§ 42-43A) was (and each of their successors still is) concerned with some form of involuntary change in an employee's status which is initiated by his employer and which might be motivated by antiunion bias; none of those sections was (and none of their successors is) concerned with a change in an employee's status which he voluntarily initiates in his own behalf, such as voluntary retirement for accidental disability under G. L. c. 32, § 7(1). We are of the opinion that such a voluntary retirement is not a "termination" within the meaning of § 8.

We also consider the question of the intended scope of the reference in G. L. c. 150E, § 8, to "section sixteen of chapter thirty-two" of the General Laws. Section 16 and its various subdivisions must be considered in context with other basic sections of c. 32 which were in effect when G. L. c. 150E, § 8, was enacted, such as: G. L. c. 32, § 5(1) (as amended through St. 1973, c. 1003, § 7), which was principally concerned with an employee's voluntary retirement for superannuation; G. L. c. 32, § 6(1) (as amended through St. 1967, c. 826, § 9), which was princi-

House Doc. No. 7715 to 1973 House Doc. No. 7751. See 1973 House Journal at 3206-3207.

pally concerned with an employee's voluntary retirement for ordinary disability; and G. L. c. 32, § 7(1) (as amended through St. 1967, c. 826, § 12), which the plaintiff has invoked in the present case and which was principally concerned with an employee's voluntary retirement for accidental disability.[7] Subdivision (1) of § 16 (as amended through St. 1967, c. 826, § 21) was concerned solely with an employee's involuntary retirement for superannuation, ordinary disability or accidental disability; subdivision (2) of § 16 (as amended through St. 1967, c. 826, § 22) was concerned solely with an employee's involuntary removal or discharge; subdivision (3) of § 16 (as amended through St. 1967, c. 826, § 23) provided an employee with a right of review by a District Court of any adverse decision of a local retirement board under subdivision (1) or subdivision (2); and subdivision (4) of § 16 (as amended through St. 1962, c. 391), which the defendant insists on in this case, provided an employee with a right of appeal to CRAB with respect to an adverse decision by a local retirement board on his application for voluntary retirement under § 5(1), § 6(1) or § 7(1).[8]

It should be clear from the immediately foregoing discussion that only subdivisions (1) and (2) of § 16 of G. L. c. 32 were concerned (as they still are) with situations which mesh with the words "suspension, dismissal [or] removal" which are found in G. L. c. 150E, § 8. Those are the very types of situation in which there might be room for the operation of antiunion bias at the local level and in which the Legislature could have concluded that there was need for a prompt and binding decision of an arbitrator which would allay or forestall labor unrest. No such consideration is apparent in the case of an employee like

[7] As before, we need not be, and are not, concerned with any of the subsequent amendments of any of the subdivisions of any of the sections of G. L. c. 32 which are cited in our opinion.

[8] The provisions of G. L. c. 32, § 16(5) (as amended through St. 1958, c. 321, § 22), are of no present materiality.

the plaintiff who voluntarily initiates a change in his employment status by applying for retirement for accidental disability under G. L. c. 32, § 7(1), and who has available to him the right of appeal to CRAB which is afforded by G. L. c. 32 § 16(4). Accordingly, we hold that the reference to "section sixteen of chapter thirty-two" which is found in the concluding proviso of G. L. c. 150E, § 8, does not comprehend the right of review by CRAB which is set out in G. L. c. 32, § 16(4), and which is available to an employee who voluntarily applies for accidental disability retirement under G. L. c. 32, § 7(1).

The judgment is to be modified by striking out the provision for dismissal and by substituting in place thereof a declaration to the effect that the plaintiff is not entitled to have the question of his disability determined by an arbitrator and, as so modified, is affirmed.

*So ordered.*